**EXEMPT CARRIERS, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 79–3765.**

United States Court of Appeals,
Fifth Circuit.
Unit B

May 11, 1981.

W. Guy McKenzie, Jr., Spector & Tunnicliff, Samuel Spector, Robert L. Hinkle, Tallahassee, Fla., for plaintiff-appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief Appellate Sect., Richard Farber, Richard D. Buik, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before TUTTLE, RONEY and VANCE, Circuit Judges.

RONEY, Circuit Judge:

In this accumulated earnings tax refund suit, the taxpayer, Exempt Carriers, Inc., attempted to prove its earnings were retained to finance planned expansion projects and were not accumulated beyond its reasonably anticipated business needs. After presentation of all the evidence to the jury, the district court granted a directed verdict for the Government, holding no reasonable jury could find that taxpayer's plans were sufficiently specific, definite and feasible to justify the accumulations. Finding taxpayer's evidence sufficient to create a jury question, we reverse the directed verdict and remand the case for trial.

Exempt Carriers principally operates as a truck broker, locating independent truckers to backhaul loads for agricultural producers and other shippers. During fiscal years (ending September 30) 1969 through 1974, Exempt Carriers accumulated all of its net earnings. Its retained earnings increased from $229,264 at the close of 1969 to $354,-756 at the close of 1974 and its net current

assets doubled during the period from $111,-097 to $234,998. Based on these figures, the Government assessed accumulated earnings taxes. At trial, Exempt Carriers, which had the burden of proving the assessment was erroneous, sought to show that in order to compensate for an anticipated decline in the company's traditional source of income, earnings were accumulated to finance two planned projects: expansion of its brokerage business and possible entry into the trucking business in conjunction with a sister company, and development of real estate. The district court directed a verdict for the Government, concluding the taxpayer had failed to present sufficient evidence to show it had specific, definite and feasible plans for use of the accumulation. Exempt Carriers appeals.

■ Whether Exempt Carriers had specific, definite and feasible plans during the relevant tax years for use of its accumulated earnings is a question of fact. *Motor Fuel Carriers, Inc. v. Commissioner*, 559 F.2d 1348, 1352 n.3 (5th Cir. 1977); *Myron's Enterprises v. United States*, 548 F.2d 331, 334 (9th Cir. 1977). A party is entitled to a directed verdict only if, considering the evidence in the light most favorable to the party opposed to the motion,

> the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.... On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (*en banc*).

■ The substantive law to be applied is not in dispute. Internal Revenue Code § 532(a), 26 U.S.C.A. § 532(a), imposes an accumulated earnings tax on a corporation

> formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of

any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

Accumulation of earnings and profits beyond the reasonable needs of the business is determinative of the purpose to avoid taxes unless the taxpayer by a preponderance of the evidence proves to the contrary. 26 U.S.C.A. § 533(a). The "reasonable needs of the business" include its reasonably anticipated business needs. 26 U.S.C.A. § 537(a)(1). In order to justify an accumulation of earnings, however, there must not only be an indication that the future needs of the business require such accumulation, but the corporation must have specific, definite, and feasible plans for the use of such accumulation.

> Such an accumulation need not be used immediately, nor must the plans for its use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business.

Treas.Reg. § 1.537–1(b)(1), 26 C.F.R. § 1.537–1(b)(1).

In the leading accumulated earnings tax case in this Circuit, *Motor Fuel Carriers, Inc. v. Commissioner*, 559 F.2d 1348 (5th Cir. 1977), where the taxpayer also argued its earnings were accumulated to finance planned expansion, the Court noted that the relevant inquiry is whether the company's plans appear to have been a real consideration during the tax year in question rather than simply an afterthought to justify the challenged accumulations. *Id.* at 1354, quoting *Faber Cement Block Co. v. Commissioner*, 50 T.C. 317, 332–33 (1968). The Court said in order for plans to be specific

and definite the taxpayer need not have "formal blueprints for action." The test is whether the taxpayer's intent to undertake the plans is manifested by some "substantial move toward implementation." *Id.* at 1352. Furthermore, if definite plans exist, they need not be carried out immediately or in a relatively short time after the close of the taxable year. In this regard, evidence of subsequent events, such as later completion of the project, is relevant if it throws light on the facts as they existed in the challenged years. *Id.* at 1353.

■ An examination of Exempt Carriers' evidence with regard to its alleged real estate development plans reveals that it was sufficient to create a jury question. Briefly, the evidence, characterized in the light most favorable to the taxpayer, was that after other unsuccessful efforts to acquire land, Exempt Carriers purchased the Thornton property for $120,000 in 1969. In 1970, the corporation discussed the property with a contractor and a civil engineer and was advised by both to delay development until government officials determined the final location of a limited-access highway planned for construction on or near the Thornton property. Based on these discussions, Exempt Carriers made certain development cost estimates and determined its funds were insufficient and the property would have to be developed in phases.

Between 1972 and 1974, Exempt Carriers continued its efforts to learn where the highway would be located, remained in contact with both the engineer and contractor, and made decisions regarding lot sizes, types of uses and types of utilities. The first proposed plant was received from the engineer in October 1974, and in November 1974 the corporation contracted for a topographical survey. In 1976, after an unanticipated six-year delay, the location of the highway was finalized, with a strip running across the taxpayer's property. Thereafter, final engineering plans were drawn up and a construction contract was executed in November 1976. At the time of trial in 1979, construction was fifty percent complete.

Several points regarding this evidence are worth noting. First, Exempt Carriers' president testified the land was purchased solely with the intention of developing it, and nothing in the record indicates to the contrary. Second, both the civil engineer and the contractor testified it was prudent to delay development until the highway location was finalized. When the property was purchased, Exempt Carriers expected a decision on the highway almost immediately, and the six-year governmental delay was both unexpected and beyond its control. Third, detailed engineering plans were completed and a construction contract was executed within a year after the highway location finally became known.

Based on this evidence, a jury could reasonably find that beginning in 1969 and throughout the years in question, Exempt Carriers had specific, definite and feasible plans to develop the Thornton property which were not indefinitely postponed but which were intended to be implemented as soon as the highway location was established. If the jury so found, there was evidence from which it could further conclude that the amounts accumulated were not beyond the taxpayer's reasonably anticipated business needs. It thus becomes unnecessary to decide whether the evidence concerning the planned trucking expansion, standing alone, was sufficient to require reversal of the directed verdict.

In reaching this conclusion, the Court does not suggest the probable outcome of this case. We have not recounted all the evidence, favorable and unfavorable, that will be before the jury. Determinations regarding the credibility of witnesses and the weight to be given conflicting evidence are the exclusive province of the factfinder. But the evidence viewed most favorably to the taxpayer was sufficient to raise a jury question.

REVERSED AND REMANDED.